IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TINA MARIE ROBY,<br><br>       Plaintiff,<br><br>       v.<br><br>KILOLO KIJAKAZI,<br>   Acting Commissioner of Social Security,<br><br>       Defendant. | Civil Action No. 22-1886 |

## MEMORANDUM OPINION

Pending before the court are cross-motions for summary judgment filed by Tina Marie Roby ("plaintiff" or "claimant") and Kilolo Kijakazi ("defendant" or "Commissioner"). For the reasons below, the court will grant defendant's motion for summary judgment (ECF No. 18) and will deny plaintiff's motion (ECF No. 13).

I.     **Procedural Background**

On July 17, 2020, plaintiff protectively filed applications for disability insurance benefits and supplemental security income, alleging that she became disabled on October 1, 2018, due to Type II Diabetes, diabetic neuropathy in hands and feet, osteoporosis, carpal tunnel syndrome ("CTS") in both hands, chronic obstructive pulmonary disease ("COPD"), and sciatica. (Tr.[1] 81, 96, 272–87). These claims were denied initially on January 15, 2021, (Tr. 81–95, 96-110, 154–61) and upon reconsideration on May 20, 2021 (Tr. 113–29, 130–46, 162–69). After a hearing on September 30, 2021, an administrative law judge (the "ALJ") issued an unfavorable decision on

---

[1] A certified copy of the transcript is located at ECF No. 6.

December 6, 2021. (Tr. 12–30). The Appeals Council denied review on October 27, 2022. (Tr. 1–6). Plaintiff appealed to this court and moved for summary judgment on August 7, 2023 (ECF No. 12). Defendant moved for summary judgment on October 6, 2023 (ECF No. 17).

## II.  Factual and Medical Background

### A.  General Background

Plaintiff's alleged disability dates to October 1, 2018, at which time she was 48 years old. (Tr. 12, 20). She has an eighth-grade education and has previously worked as a pants presser, hotel housekeeper, newspaper carrier, and inventory associate. (Tr. 56–60). She also reported that she provided care for her 16-month-old grandson, which included bathing, changing, dressing, and doing "everything" for him. (Tr. 350).

### B.  Medical Providers

Between 2017 and 2021, plaintiff was evaluated by at least 6 different medical providers. The record evidence from those 6 providers is as follows.

#### 1. Dr. Charles E. Wagner, D.O.

Dr. Charles Wagner is plaintiff's primary care physician ("PCP"). (Tr. 793). Plaintiff had appointments with Dr. Wagner twice in October 2017 and a follow-up appointment in January 2018. (Tr. 494–521). At one of the October 2017 appointments, Dr. Wagner noted the plaintiff reported she "feels good" and her "sleep is good." (Tr. 504). At the follow-up appointment in January 2018, Dr. Wagner again noted that the plaintiff reported she "feels good," her "sleep is good," and she walks for exercise.  (Tr. 515). Plaintiff saw Dr. Wagner again in September 2018 for an upper respiratory infection, but did not make any complaints related to alleged disability. (Tr. 528–35).

After nearly 2 years without seeing Dr. Wagner, plaintiff saw him for a general checkup in June 2020. (Tr. 547). For the first time, plaintiff reported that she had carpal tunnel syndrome. (Tr. 547). She reported that she was to have surgery for this condition, but the surgeon would not complete the surgery because she did not have insurance. (Tr. 547). Plaintiff noted that she "thinks she has some muscle wasting of her hands," and she "feels muscle weakness and joint pain all over." (Tr. 547). On the physical exam, Dr. Wagner noted "strength appears normal, no obvious deformities present, Tinnel's positive b/l, muscle wasting base of the thumb." (Tr. 551).

Plaintiff next saw Dr. Wagner in September 2020 for a "follow-up of diffuse arthralgias and edema." (Tr. 560). For his Assessment/Plan, Dr. Wagner noted for diffuse arthralgias the plan was "to consult a Rheumatologist for further recommendation," and to "continue ibuprofen." (Tr. 565). There was no mention of carpal tunnel in the September 2020 notes from Dr. Wagner. (Tr. 560–71).

### 2. Dr. John Allan Esarco, D.C.

The record contains 2 opinions from plaintiff's chiropractor, Dr. John Esarco. (Tr. 1000, 1014). In the first statement, dated October 9, 2020, Dr. Esarco made the following assertions: plaintiff would be off task more than 25% during the workday and would likely be absent more than 4 days per month; plaintiff can never climb ladders and scaffolds, be exposed to unprotected heights, dust, odors, fumes, pulmonary irritants, extreme cold, extreme heat or vibrations; plaintiff can rarely climb stairs and ramps, balance, stoop, kneel, crouch, crawl, rotate head and neck, be exposed to moving mechanical parts, operate motor vehicle or be exposed to humidity and wetness; and plaintiff can maintain attention and concentration for less than 30 minutes at a time. (Tr. 1014–015).

3

In the second statement, dated August 23, 2021, Dr. Esarco made the following assertions: plaintiff would likely be off task more than 25% during the workday and would likely be absent more than 4 days per month; plaintiff can occasionally lift and carry 10 pounds and rarely 20 pounds; plaintiff can sit 4 hours total in an 8-hour workday, can stand 1 hour total in an 8-hour workday and walk 2 hours total in an 8-hour workday; plaintiff can rarely reach with the left arm and never reach with the right arm; plaintiff can occasionally handle, finger, feel, push or pull with the bilateral hands; plaintiff can occasionally use foot controls bilaterally; plaintiff can occasionally climb stairs and ramps, rarely climb ladders and scaffolds, occasionally balance, stoop, kneel, crawl and rotate head and neck, and rarely crouch; plaintiff can never be exposed to unprotected heights, dusts, odors, fumes or pulmonary irritants; plaintiff can rarely be exposed to moving mechanical parts, humidity and wetness, extreme cold, or extreme heat; and plaintiff can occasionally operate a motor vehicle and be exposed to vibrations. (Tr. 1000–003). Dr. Esarco also provided a list of the plaintiff's diagnoses for which he provided treatment: M99.01; M99.02; M99.03; M51.27; R51; and M79.7.[2] (Tr. 1000).

### 3. Kristin Clayton, N.P.

On October 23, 2020, Kristin Clayton, a nurse practitioner ("N.P."), examined plaintiff based on a referral from the Bureau of Disability Determination. (Tr. 745). N.P. Clayton noted plaintiff reported that she started experiencing back pain in 2011 and went to a chiropractor who diagnosed her with arthritis, osteoporosis, and sciatica. (Tr. 745). N.P. Clayton also noted plaintiff

---

[2] Dr. Esarco provided the diagnosis codes only. The codes and their corresponding diagnoses were found at https://www.unboundmedicine.com/icd/: M99.01 - Segmental and somatic dysfunction of cervical region; M99.02 - Segmental and somatic dysfunction of thoracic region; M99.03 - Segmental and somatic dysfunction of lumbar region; M51.27 - Other Intervertebral Disc Displacement, Lumbosacral Region; R51 - Headache, unspecified; and M79.7 – Fibromyalgia. Nothing specifically relating to plaintiff's hands or feet, such as plaintiff's CTS, was listed.

4

reported that in 2015 she was diagnosed with carpal tunnel syndrome. (Tr. 746). Plaintiff's only current medication listed at the time was over-the-counter Prilosec. (Tr. 746). N.P. Clayton noted plaintiff did not appear to be in acute distress; her gait was normal; her hand and finger dexterity was intact; and she was able to zip, button, and tie without difficulty. (Tr. 747–48).

N.P. Clayton obtained x-rays of plaintiff's spine. (Tr. 748). N.P. Clayton noted plaintiff's cervical spine was normal, she had moderate degenerative changes at $L_5$ to $S_1$, and mild degenerative changes for the rest of her lumbar spine. (Tr. 748). N.P. Clayton asserted the plaintiff can continuously lift and carry up to 10 pounds, frequently lift and carry up to 20 pounds, rarely lift and carry up to 50 pounds, and never lift or carry over 50 pounds. (Tr. 752). N.P. Clayton noted the plaintiff could sit for 4 hours at one time, stand and/or walk up to 1 hour at a time, sit/stand/walk 8 hours total in an 8-hour day, continuously use her hands bilaterally, continuously use her feet bilaterally, and continuously perform all postural activities. (Tr. 753–55). N.P. Clayton also found plaintiff had a normal range of motion in her shoulders, elbows, wrists, knees, hips, spine, and ankle, as well as 100% grip strength in both hands. (Tr. 759–62).

### 4. Dr. John Gerome Bertolino, M.D.

On December 30, 2020, Dr. John Gerome Bertolino reviewed plaintiff's claim for disability and determined she was not disabled. (Tr. 81–95). Dr. Bertolino determined plaintiff could perform a range of medium work, which was at least partially based on her activities of daily living, medication treatment, and treatment other than medication. (Tr. 87, 94). Dr. Bertolino provided the following personalized disability explanation:

> Although you have some limitations, the evidence shows that you are not totally disabled. You are able to walk, stand, and move about satisfactorily. Your COPD has been generally well-controlled on the current medication regimen and has not resulted in any hospitalizations. While you may have some difficulties with your hands, you are able to grip and handle objects effectively. You[r] diabetes has not

5

resulted in damage to any vital organs. The evidence does not show any other conditions which are significantly limiting.

Your condition results in some limitations in your ability to perform work related activities. We have determined that your condition is not severe enough to keep you from working. We considered the medical and other information, your age and education in determining how your condition affects your ability to work. We do not have sufficient vocational information to determine whether you can perform any of your past relevant work. However, based on the evidence in file, we have determined that you can adjust to other work.

(Tr. 95).

### 5. Dr. Toni Jo Parmelee, D.O.

On May 20, 2021, Dr. Toni Jo Parmelee conducted a review of Dr. Bertolino's initial review and came to the same conclusion: plaintiff was not disabled and could perform a range of medium work. (Tr. 113–29). Dr. Parmelee indicated that on April 1, 2021, "contact with claimant stated that she is working and did not wish to continue disability claim, stating it was done by her lawyer. Advised a decision would be made with the evidence in file." (Tr. 119).

### 6. Dr. Marc Brozovich, M.D.

On August 18, 2021, Dr. Marc Brozovich provided a treating source statement. (Tr. 771–77). Dr. Brozovich asserted plaintiff had no restrictions related to any of her alleged disabilities. (Tr. 771–77).

### III. Standard of Review

When presented with a social security case, district courts review the record to determine whether there is substantial evidence to support the Commissioner's decision. *Allen v. Bowen*, 881 F.2d 37, 39 (3d Cir. 1989). The threshold for substantial evidence is low: "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). In reviewing the record as a whole,

6

"[t]he presence of evidence in the record that supports a contrary conclusion does not undermine the Commissioner's decision so long as the record provides substantial support for the decision." *Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x 761, 764 (3d Cir. 2009); *see Hartfant v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999) ("We will not set the Commissioner's decision aside if it is supported by substantial evidence, even if we would have decided the factual inquiry differently.").

## IV. The ALJ's Decision

In his decision, the ALJ determined that plaintiff's degenerative disc disease, COPD, sciatica and obesity were severe impairments, and her diabetes and CTS were not severe impairments.[3] (Tr. 13). Regarding plaintiff's CTS, the ALJ noted that although she "had positive Tinnel's during an examine in June of 2020, she had normal strength." (Tr. 13). Additionally, "[d]uring an examination in November of 2020, the claimant had intact dexterity and normal grip strength." (Tr. 13).

Ultimately, the ALJ found plaintiff was not disabled because although she met her burden with respect to the first 4 steps of the familiar sequential evaluation, the Commissioner met her burden at the fifth step.[4] The ALJ determined plaintiff had the following residual functional capacity ("RFC"):

---

[3] As the defendant pointed out in her brief, "[p]laintiff does not challenge the ALJ's evaluation of her impairments, particularly, that her diagnosed carpal tunnel syndrome is non-severe." (ECF No. 18 at 8 n.6).

[4] When reviewing a claim for disability, administrative law judges utilize a 5-step analysis that involves "considering whether: (1) the claimant worked during the alleged period of disability; (2) the claimant has a severe, medically determinable impairment; (3) the impairment meets the requirements of a listed impairment; (4) the claimant can continue to perform past relevant work; and (5) the claimant can perform other work in the national economy." *Izzo v. Comm'r of Soc. Sec.*, 186 F. App'x 280, 284–85 (3d Cir. 2006). If the claimant can meet his or her burden at the first 4 steps, then the burden shifts to the Commissioner, who must prove step 5. *Id.*

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except could be on her feet standing and/or walking for 6 hours; could be seated at least 2 hours out of 8; in each hour there would be more standing and/or walking to get to the totals and would need to sit down at least once per hour to change positions; limited to no more than occasional pushing, pulling, climbing, balancing, stooping, kneeling, crouching, and crawling; limited to jobs involving no more than frequent bilateral manual dexterity; no temperature extremes, excessive levels of wetness or humidity, no concentrated levels of vibrations, no concentrated levels of airborne irritants such as smokes, fumes, dusts, or gases; and limited to jobs involving no exposure to occupational hazards such as unprotected heights, dangerous machinery, ropes, ladders or scaffolds.

(Tr. 15).

In formulating plaintiff's RFC, the ALJ found "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (Tr. 16). For instance, regarding plaintiff's back-related impairments, the ALJ found the objective evidence, "which includes generally normal examinations," is consistent with an RFC of light work. (Tr. 16). Likewise, the ALJ found that plaintiff's obesity does not prohibit her from an RFC of light work. (Tr. 17). The ALJ also determined that plaintiff's daily activities, "which are relatively full and independent," are consistent with an RFC of light work, and that plaintiff's medical treatment and medication use "are not consistent with disabling impairments." (Tr. 17–18).

The ALJ considered the medical opinions of the 5 medical sources[5] in the record. (Tr. 18–19).

---

[5] Though the record contains treatment records from plaintiff's PCP, Dr. Charles Wagner, the record does not contain a medical opinion from Dr. Charles Wagner concerning any physical limitations or whether plaintiff has severe impairments.

First, the ALJ considered the medical source statement of Kristin Clayton, N.P. (Tr. 18). N.P. Clayton examined the plaintiff on November 23, 2020. (T. 745). The ALJ provided the following summary of N.P. Clayton's medical source statement:

> Ms. Clayton determined the claimant is capable of lifting/carrying 50 pounds occasionally, 20 pounds frequently, and up to 10 pounds continuously; sitting 4 hours at one time for a total of 8 hours; standing or walking 1 hour at one time for a total of 8 hours each; continuously using either hand; continuously operating foot controls with either foot; continuous postural activities; continuous exposure to environmental limitations; and exposure to very loud noise.

(Tr. 18).

Second, the ALJ grouped the physical residual capacity assessments of doctors John Gerome Bertolino, M.D., and Toni Jo Parmelee, D.O., and discussed those assessments. (Tr. 18). The ALJ provided the following summary of their assessments:

> Dr. Bertolino and Dr. Parmelee determined the claimant is capable of lifting and/or carrying 50 pounds occasionally and 25 pounds frequently, standing and/or walking for a total of about 6 hours in an 8-hour workday, sitting for a total of about 6 hours in an 8-hour workday, unlimited pushing and/or pulling other than shown for lifting and/or carrying, and frequent postural maneuvers except for unlimited balancing, kneeling, crouching, and crawling. Dr. Bertolino and Dr. Parmelee further determined the claimant must avoid concentrated exposure to vibration and hazards.

(Tr. 18). The ALJ concluded that the opinions of those 3 medical providers "are generally consistent with the claimant being able to perform at least a range of light work." (Tr. 18). He added "[t]heir opinions are generally supported by the claimant's examinations and objective testing that have generally shown no worse than some mild findings." (Tr. 18).

The ALJ, however, deviated slightly from those opinions and found that "the record supports some additional and different limitations" because he gave the claimant the "benefit of the doubt." (Tr. 18–19). The ALJ concluded that the 3 opinions are "generally persuasive because

they are generally supported by the evidence and are generally consistent with the record as a whole." (Tr. 19).

Third, the ALJ considered the medical source statement from Marc Brozovich, M.D., from August 21, 2021. (Tr. 19). The ALJ noted that Dr. Brozovich was a treating source of the claimant, and summarized his medical source statement as follows:

> Dr. Brozovich determined the claimant has no restrictions while being off task 0% of the workday, maintaining attention and concentration for 2 hours before requiring a break, and missing 0 days of work per month.

(Tr. 19). The ALJ noted that the opinion of Dr. Brozovich is "generally consistent with a finding of not disabled." (Tr. 19). Again, however, the ALJ deviated from that opinion and found "the record supports the claimant having some physical limitations." (Tr. 19). The ALJ concluded his summation of Dr. Brozovich's opinion by noting it "is generally persuasive because it is generally supported by the evidence and is generally consistent with the record as a whole." (Tr. 19).

Fourth, the ALJ reviewed the medical source statements of John Esarco, D.C. (Tr. 19). Dr. Esarco completed 2 medical source statements, the first on October 9, 2020, and the second on August 23, 2021. (Tr. 19). The ALJ summarized the first statement:

> [Dr. Esarco] indicated the claimant is capable of rare postural activities except for never climbing ladders and scaffolds, and no exposure to environmental limitations except for rare exposure to moving mechanical parts, operating a vehicle, and humidity and wetness. [D]r. Esarco determined the claimant would be off-task more than 25% of the workday, would be able to maintain attention and concentration for less than 30 minutes, and would miss work more than 4 days per month.

(Tr. 19). The ALJ summarized the second statement as:

> [Dr. Esarco] indicated the claimant is capable of lifting/carrying 20 pounds rarely and 10 pounds occasionally; sitting for 4 hours; standing for 1 hour; walking for 2 hours; occasionally using either hand except for rarely reaching with the left and never with the right; occasionally operating foot controls bilaterally; occasional postural activities except for rarely climbing ladders and scaffolds; and rare or occasional exposure to environmental limitations except for no exposure to unprotected heights and dust/odors/fumes/pulmonary irritants. [D]r. Esarco

> determined the claimant would be off-task more than 25% of the workday, and would miss work more than 4 days per month.

(Tr. 19). The ALJ determined these statements were "inconsistent with the claimant's examinations that have been generally unremarkable with the claimant having normal strength and gait[,]" and "[t]hey are also inconsistent with objective imaging that has shown generally mild degenerative changes." (Tr. 19). The ALJ concluded "the opinions of [D]r. Esarco are not persuasive because they are not supported by the evidence and are not consistent with the record as a whole." (Tr. 19).

## V. Discussion

Plaintiff seeks a remand in this case asserting the ALJ's RFC determination is not supported by substantial evidence. (ECF No. 13 at 6). Plaintiff's primary argument is that the ALJ did not properly address consistency and supportability in his evaluation of Dr. Esarco's medical statements. (ECF No. 13 at 9–11). Plaintiff's secondary argument is that the ALJ did not provide a "traceable path from the evidence to the ALJ's determination that the [p]laintiff can perform light work." (ECF No. 13 at 12). The court will address each argument in turn.

### A. Supportability and Consistency of Dr. Esarco's medical statements

For claims filed after March 27, 2017, administrative law judges must consider 5 factors when evaluating the persuasiveness of medical opinions. 20 C.F.R § 404.1520c(c). Of those factors, supportability and consistency are the 2 most important; thus, administrative law judges must "explain how [the judge] considered the supportability and consistency factors for a medical source's medical opinions . . . ." *Id.* § 404.1520c(b)(2).

The regulations describe supportability as

> The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

*Id.* § 404.1520c(c)(1). The regulations describe consistency as

> The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

*Id.* § 404.1520c(c)(2). To aid in distinguishing the 2 concepts, one explanation is that "supportability relates to the extent to which a medical source has articulated support for the medical source's opinion, while consistency relates to the relationship between the medical source's opinion and other evidence within the record." *Pipkin v. Kijakazi*, No. CV 22-2-E, 2023 WL 411291, at *1 n.2 (W.D. Pa. Jan. 25, 2023) (quoting *Cook v. Comm'r of Soc. Sec.*, No. 6:20-CV-1197, 2021 WL 1565832, at *3 (M.D. Fla. Apr. 6, 2021)).

In *Pipkin*, the court found that the administrative law judge conflated supportability and consistency by stating "the evidence does not support [his] restrictive findings" and "the findings in the objective evidence support[ed] less restrictive limitations." *Id.* The court noted that "the ALJ effectively considered consistency twice because, in her consideration of supportability, she remarked that the evidence did not support Dr. Tatum's opinions instead of addressing whether Dr. Tatum had offered evidentiary and explanatory support for his opinions." *Id.* The court—albeit cautiously "because an ALJ's decision must rise or fall on its stated rationale"—determined this was harmless error. *Id.* The harmless error doctrine may be invoked where "the [c]ourt can

determine with confidence that an error did not impact the outcome of a case," making a remand unnecessary. *Id.* [6]

The court in *Pipkin*, determined the conflation of consistency and supportability was not fatal to the plaintiff's case because:

> Dr. Tatum's opinions were unaccompanied by supporting evidence or explanation. Dr. Tatum's opinions were rendered largely by checkmarks and circles on a "Physical Treating Medical Source Statement." Other than a cursory documentation of Plaintiff's diagnoses/general symptoms and a note that physical therapy had not been helpful, no supporting explanation was offered by Dr. Tatum for his opinion that Plaintiff's pain would interfere with his attention and concentration "constantly," nor for his opinion that Plaintiff would only be able to sit for two hours and stand/walk for ten minutes total in an eight-hour workday. Likewise, Dr. Tatum's opinions that Plaintiff would need unscheduled breaks and more than four absences monthly were not accompanied by any explanation or reference to support objective evidence. Accordingly, the Court finds that the ALJ's error in her evaluation of supportability toward her persuasiveness determination for Dr. Tatums' opinions was harmless.

*Id.*

In a case decided shortly after *Pipkin*, the court declined to find harmless error where there was some diagnostic explanation given by the medical source. *Kaschak v. Kijakazi*, No. CV 21-354-E, 2023 WL 2354812, at *5, (W.D. Pa. Mar. 3, 2023). In *Kaschak*, the administrative law judge's evaluation that "[t]he opinion of the psychological consultative examiner is somewhat persuasive, however marked limitations are not supported by the record," did not properly address the supportability of medical opinion evidence because "Ms. Connell provided an, albeit limited, diagnostic explanation for her opinion that Plaintiff would be markedly limited in some respects . . . ." *Id.* at *3–5. Thus, the court found the error was harmful. *Id.* at *5.

---

[6] *See Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010) (noting affirmance through harmless error is permitted when "it is predictable with great confidence that the agency will reinstate its decision on remand . . . ."); *Pack v. Comm'r of Soc. Sec.*, No. CV 20-1128, 2021 WL 3682151, at *2 n.2 (W.D. Pa. Aug. 19, 2021) (noting that remand is not required "[w]here a reviewing court is confident that an ALJ error had no effect on the outcome of the case . . . .").

13

Here, Dr. Esarco's first statement dated October 9, 2020, lacked supportability for the same reasons as Dr. Tatum's medical opinion in *Pipkin*. Dr. Esarco's opinions[7] were rendered by checkmarks accompanied by plaintiff's diagnoses and a statement to "see above clinical and medical findings." (Tr. 1014–015). Like Dr. Tatum's statement, this kind of cursory documentation is not a supporting explanation. *See Pipkin*, 2023 WL 411291, at *1 n.2.

Dr. Esarco's second treating source statement, dated August 23, 2021, was on the same check-the-box form, but contained some additional statements (Tr. 1000–003). Where the treating source statement form asked to support his assessment of the lifting/carrying limitations, Dr. Esarco noted "physical/ orthopedic/ neurological findings showing spinal/muscle impairment, x-rays in the past showing positive findings." (Tr. 1001). When asked to support his assessment of the sitting/standing/walking limitations, Dr. Esarco noted "positive physical exam findings + x-ray findings." (Tr. 1001). When asked to support his assessment of the use of hands limitations, Dr. Esarco noted "positive physical, orthopedic, neurological findings, x-rays[8], spinal

---

[7] Dr. Esarco's opinions could not be considered at step 2 because a chiropractor's opinion is not an acceptable medical source opinion for purposes of determining whether an impairment is severe. *See Sherry F. v. Kijakazi*, No. 4:21-CV-00023, 2022 WL 4599215, at *6 (S.D. Ind. Sept. 30, 2022) (concluding that a chiropractor's "findings cannot establish any medically determinable . . . impairments" because "[t]he SSA does not recognize chiropractors as an acceptable medical source"); *McNaughton v. Kijakazi*, No. CV 20-00500-B, 2022 WL 4931879, at *10 (S.D. Ala. Sept. 6, 2022) (explaining that "evidence from other medical sources, such as chiropractors, cannot establish the existence of a medically determinable impairment"). Dr. Esarco's opinions, however, are medical source opinions for the purposes of an administrative law judge's determination of apporiate limitations. *See McNaughton*, 2022 WL 4931879, at *10.

[8] The only x-rays in the records submitted by Dr. Esarco were of the spine and were obtained from another chiropractor. (Tr. 1006–013). The x-rays noted "THE CONTENTS OF THIS POSTURERAY® REPORT ARE NOT A SUBSTITUTE FOR YOUR HEALTH CARE PROVIDERS INDEPENDENT AND THOROUGH DIAGNOSIS. . . . Your health care provider's signature below demonstrates that your health care provider read, reviewed, and approved the findings in this [report] before making it available to you." (Tr. 1006). The form is signed by neither Jason Tripp, D.C., the chiropractor who obtained the x-rays, nor by Dr. Esarco. (Tr. 1006). Notably, there were no x-rays of plaintiff's hands or feet. (Tr. 1006–013).

degeneration, disc problems." (Tr. 1002). When asked to support his assessment of the use of feet limitations, Dr. Esarco noted "positive physical, orthopedic, neurological findings, x-rays[9], spinal degeneration, disc problems." (Tr. 1002). When asked to support his assessment of the postural activities limitations, Dr. Esarco noted "positive physical, orthopedic, neurological findings. Positive x-ray findings." (Tr. 1003). In these instances, Dr. Esarco provided mostly repetitious general assertions of "findings" without any explanation about what those "findings" were. (Tr. 1000–003). In addition to not explaining what the "findings" were, Dr. Esarco made no attempt to explain why the "findings" supported his assessment. (Tr. 1000–003).[10] Without explaining why the findings or evidence support his assessment, like the opinion in *Kaschak*, Dr. Esarco's second treating source statement is little more than rendering his opinion with checkmarks becasue there was nothing for the ALJ to consider in terms of supportability, making the second source statement flawed in the same manner as the one in *Pipkin*.

In concluding that "the opinions of Mr. Esarco are not persuasive because they are not supported by the evidence and are not consistent with the record as a whole," the ALJ—like the ALJ in *Pipkin*—considered consistency twice. The ALJ's determination that the statements were "inconsistent with the claimant's examinations that have been generally unremarkable with the claimant having normal strength and gait[,]" and "[t]hey are also inconsistent with objective imaging that has shown generally mild degenerative changes," largely relates to Dr. Esarco's opinion being inconsistent with the record as a whole—not whether the statements are supported by Dr. Esarco's evidence. As explained above, Dr. Esarco provided only generic references and

---

[9] *See supra* note 8.

[10] By contrast, N.P. Clayton supported her opinion by referencing x-rays showing plaintiff's cervical spine was normal, she had moderate degenerative changes at $L_5$ to $S_1$, and mild degenerative changes for the rest of her lumbar spine. (Tr. 748).

15

did not provide the ALJ with an explanation of what evidence specifically supports his opinion and why that evidence supports it.[11] Under these circumstances, there is no supportability provided by Dr. Esarco. Accordingly, as was the case in *Pipkin*, this court determines with confidence that any error committed by the ALJ in his evaluation of supportability regarding the persuasiveness of Dr. Esarco's opinions was harmless, *i.e.*, it "did not impact the outcome." *Pipkin*, 2023 WL 411291, at *1 n.2.

### B. The ALJ's determination that plaintiff can perform light work

Plaintiff also asserts that the ALJ's determination that plaintiff is limited to light work is error because "there is no traceable path from the evidence to the ALJ's determination that Plaintiff can perform light work." (ECF No. 13 at 12).

As previously noted, administrative law judges utilize a 5-step process to determine whether a claimant is disabled. *Izzo*, 186 F. App'x at 284–85. Step 4 is where an administrative law judge must determine the claimant's RFC and whether she can perform her "past relevant work." *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 201–02 (3d Cir. 2019). An RFC is "the most [the claimant] can still do despite [the claimant's] limitations." *Id.* at 202. Where "the claimant can perform [her] past relevant work despite [her] limitations, [s]he is not disabled[,]" but "[i]f [s]he cannot, the ALJ moves on to step five." *Id.*

It is "[t]he ALJ—not treating or examining physicians or State agency consultants—[who] must make the ultimate disability and RFC determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011). It follows that "[s]urveying the medical evidence to craft an RFC is

---

[11] For instance, Dr. Esarco does not explain how "positive physical, orthopedic, neurological findings, x-rays, spinal degeneration, disc problems" supports his opinion that plaintiff had significant manipulative limitations. (Tr. 1001).

part of an ALJ's duties." *Titterington v. Barnhart*, 174 F. App'x 6, 11 (3d Cir. 2006). In so doing, "[t]here is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC." *Id.*; *see Ziegler v. Saul*, No. CV 2:19-1103, 2021 WL 964939, at *3 (W.D. Pa. Mar. 15, 2021) ("In fact, an ALJ is permitted to make an RFC assessment even if no doctor has specifically made the same findings.").

Turning to the ALJ's RFC determination, the ALJ determined "the claimant has the residual functional capacity to perform light work . . . ." (Tr. 15). "After careful consideration of the evidence," the ALJ determined "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Tr. 16). The ALJ provided the following pertinent analysis:

1. **Back Pain**

> In terms of the objective evidence, the claimant's medical history is inconsistent with and unsupportive of the claimant's allegations of disability. The claimant's medical record establishes that the claimant's impairments do not prevent her from engaging in work within the residual functional capacity as stated above. . . . Examination was generally unremarkable with the claimant having normal gait, full squat, normal stance, no scoliosis, negative straight leg raising, stable and nontender joints, no sensory deficit, and 5/5 strength (Exhibit 4F). X-rays of the claimant's lumbar spine showed isolated moderate degenerative changes at L5-S1 with remainder of lumbar spine having very mild degenerative changes (Exhibits 5F, 9F). . . . Therefore, the objective evidence concerning the claimant's back-related impairments, which includes generally normal examinations, is consistent with the claimant's residual functional capacity as determined that limits the claimant to a range of light work.

(Tr. 16).

2. **COPD**

> The claimant exhibited clear lungs and normal percussion. She was diagnosed with history of asthmatic bronchitis (Exhibit 4F). Accordingly, the claimant's COPD has been accounted for in the residual functional capacity that restricts the claimant's exposure to certain environments.

(Tr. 16).

> 3. **Obesity**
>
> The claimant's obesity has not seriously affected the claimant's ability to use the upper extremities or in fact to get around on a regular basis. It may affect the ability to bend or squat to some degree, but the undersigned has considered any possible postural restrictions in the assessment of the claimant's residual functional capacity. . . . Furthermore, there is no indication that the claimant's obesity has significantly limited the claimant's ability to sustain a function over time.

(Tr. 16–17).

> 4. **Daily activities**
>
> In this case, the claimant's daily activities of living, which are relatively full and independent, are consistent with the above residual functional capacity assessment and are inconsistent with a disabling level of functioning. For example, in spite of her impairments, the claimant reported that she helps take care of her young grandson, prepares meals, completes some household chores, shops, drives, is able to go out alone, is able to manage her finances, spends time with others, has no problems getting along with others, and is generally independent in personal care (Exhibit 5E). These numerous activities of daily living are inconsistent with the claimant's allegations of being disabled.

(Tr. 17).

> 5. **Medical treatment and medications**
>
> The course of medical treatment and the use of medication in this case are not consistent with disabling impairments. The claimant has received generally conservative treatment. The claimant has not been recommended back surgery.

(Tr. 18).

Here, the ALJ methodically went through plaintiff's severe impairments and determined that she had the capacity to perform light work. An administrative law judge's deviation from medical source determinations is not error; rather, an administrative law judge is empowered to

make an RFC determination independent of any—or all—of the medical opinions in the record. *See Titterington*, 174 F. App'x at 11; *Ziegler*, 2021 WL 964939, at *3. The law requires there only to be "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek*, 139 S. Ct. at 1154. The ALJ discussed the relevant medical evidence regarding each of plaintiff's severe disabilities and considered plaintiff's daily activities and medical treatment. In doing so, the ALJ determined plaintiff's limitations lay somewhere between plaintiff's contentions of severe impairments limiting her ability to perform work even at the light level and the state agency medical consultants' opinions that she could perform medium work. This determination is reasonable in light of the medical opinions contrasted with plaintiff's testimony regarding her daily activities of living. Thus, there is substantial evidence to support the ALJ's RFC determination because a reasonable person could determine plaintiff was limited to light work; i.e., her limitations fell between her assertion of being unable to perform light work and the opinions of the state agency medical sources that she could perform medium work.

## VI. Conclusion

Having considered the parties' motions, the record as a whole, and the applicable law, the court finds any error committed by the ALJ was harmless error. The court will grant defendant's motion for summary judgment (ECF No. 17) and deny plaintiff's motion for summary judgment (ECF No. 12). An appropriate order and judgment will be entered.

January 18, 2024
/s/ Joy Flowers Conti
Joy Flowers Conti
Senior United States District Judge